**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Danny Reuben CASTENEDA, Defendant–Appellant.**

**No. 91–2315.**

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1992.

Rehearing Denied Feb. 3, 1992.

---

Jose Luis Ramos, Rio Grande City, Tex., for defendant-appellant.

Joseph A. Porto, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN and POLITZ, Circuit Judges, and FELDMAN, District Judge.[1]

FELDMAN, District Judge:

Danny Reuben Castenada was convicted on his guilty plea and sentenced for possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) (1988). As a condition to his plea, Castenada reserved his right to appeal the district court's denial of his motion to suppress the marijuana.

I

At the district court hearing in this case, the evidence showed that at 8:15 p.m. on November 1, 1989, U.S. Border Patrol Agent Lisandro Moreno stopped Castenada as he was driving south on Welhausen Road near Oilton, Texas, approximately 35 miles from the Mexican border. Welhausen Road is a bumpy, dusty, gravel road that connects Highways 59 and 359. It is

1. District Judge of the Eastern District of Louisi- ana, sitting by designation.

used by ranchers and oilfield workers. It is also a well-known artery for drug trafficking and routing illegal aliens.

In agent Moreno's five years with the Border Patrol, the Welhausen Road area was frequently his beat; he often patrolled twice a week. The road, Moreno knew, could be used to bypass two United States border checkpoints to avoid detection of illicit alien and drug activities. The Border Patrol had recently been informed that large groups of illegal aliens were being smuggled into the country over the Welhausen Road route. The agency had also made at least four cocaine or marijuana-related arrests along this road during the preceding three months.[2]

Agent Moreno had an intelligence report that a group of illegal aliens would be dropped off on Welhausen Road at 8 p.m. on October 31, 1989. He waited in the area that night, but no one came. He returned the next evening, November 1, 1989. At about 8:15 p.m., the agent saw Castenada's welding truck turn onto the Welhausen Road. Although Moreno testified that he knew immediately the vehicle was not large enough to carry a significant number of illegal aliens, he decided to follow the truck because it could have been a "lead" or "scout" vehicle for a large group of illegal aliens to follow.

With his driver's side window rolled down, he followed Castenada down the gravel road for about a mile. The truck was raising dust, but agent Moreno testified that a cross breeze blew the dust from his window. Critical to this appeal is his testimony that he could detect the faint odor of marijuana while following behind, and decided to stop Castenada. A later search found 257 pounds of marijuana wrapped in plastic and hidden in a special compartment underneath the truck.

The district court held a hearing and then denied Castenada's motion to suppress after noting candidly that the facts presented a close call. In his able oral ruling, the district judge admitted that he did not personally know whether it would be possible for a person to smell marijuana concealed in a compartment under a truck he was following. But the court found the agent credible.[3] Considering the totality of the circumstances, the district court concluded that Moreno reasonably suspected criminal activity and that his stop of Castenada was justified.

## II

At issue on appeal is whether, when agent Moreno stopped the truck, he had a reasonable suspicion that Castenada was engaged in criminal activity. The answer hinges on Moreno's testimony that he smelled marijuana when following behind Castaneda's truck that night.

### A.

■ A U.S. Border Patrol agent on roving patrol is justified in stopping a vehicle if he reasonably suspects, based on specific articulable facts together with rational inferences from the facts, that the vehicle might be engaged in illegal activity. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975); *United States v. Cortez*, 449 U.S. 411, 421–22, 101 S.Ct. 690, 696–97, 66 L.Ed.2d 621 (1981). In *Brignoni–Ponce*, the Supreme Court announced the roving border patrol "reasonable suspicion" test specifically in the context of an alien smuggling case. *See Brignoni–Ponce, supra. Cortez* expanded the reach of the test, explaining that roving border patrol investigatory stops pass Fourth Amendment scrutiny in any case if, based on the circumstances, the agents "could reasonably sur-

---

**2.** Moreno also indicated that narcotics had been discovered on nearly every road in this rural, south Texas area. Trafficking in people and drugs seems to be a fact of life there.

**3.** Sitting in the fact finder's unique position to view the demeanor of the witness, Judge Kazen observed:

I would say that the officer seems to be a ... candid sort of person. I mean, he did not seem to be exaggerating anything else or straining in any other area. He seemed to me to be a very honest man.

mise that the particular vehicle they stopped was engaged in criminal activity." *See Cortez, supra,* at 421–22, 101 S.Ct. at 697. These principles are well-known. Their application is at times not an easy chore.

Reasonable suspicion takes its fact-driven meaning from the totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances. *See Brignoni–Ponce, supra,* 422 U.S. at 885, 95 S.Ct. at 2582. District courts, when looking for reasonable suspicion, consider lots of common sense things: (1) the characteristics of the area, (2) the proximity of the area to the border, (3) the usual traffic patterns on a particular road, (4) the agent's previous experience with criminal traffic, (5) information about recent illegal trafficking in aliens or narcotics in the area, (6) the behavior of the vehicle's driver, (7) the appearance of the vehicle, and (8) the number, appearance and behavior of the passengers. *See United States v. Melendez–Gonzalez,* 727 F.2d 407, 410–11 (5 Cir.1984) (citing *Brignoni–Ponce, supra*); *United States v. Ervin,* 907 F.2d 1534, 1539 (5 Cir.1990); *United States v. Muniz–Ortega,* 858 F.2d 258, 260 (5 Cir. 1988).

▇▇▇ We review a district court's decision regarding the reasonableness of an investigating officer's suspicion on a motion to suppress under two different tests. First, we accept the district court's findings of historical fact unless clear error was committed. *See United States v. Harrison,* 918 F.2d 469, 473 (5 Cir.1990). We will not say that a finding is clearly erroneous unless we are "left with the 'definite and firm conviction that a mistake has been committed.'" *United States v. Fernandez,* 887 F.2d 564, 567 (5 Cir.1989) (citing *Anderson v. City of Bessemer City, N.C.,*

470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). If two permissible views of the evidence are presented, the district court's choice between them cannot be clearly erroneous. *See Fernandez, supra,* at 567. Second, the ultimate conclusion to be drawn from the found historical facts regarding the reasonableness of an investigatory stop is a conclusion of law, however, and our review is *de novo. See Harrison, supra,* at 473.

### B.

▇▇▇ The propriety of agent Moreno's stop of Castenada's truck centers on the agent's testimony that he could detect the faint odor of marijuana trailing the truck as he followed with his window open. It is this fact alone which animates a finding of reasonable suspicion; without it, the other *Brignoni–Ponce* factors are suspicion-neutral in this setting. Accepting as true all of the district court's other findings under *Brignoni–Ponce,* agent Moreno could not, as a matter of law, have had a reasonable suspicion that Castenada was engaged in criminal activity without the added fact that he smelled marijuana while trailing the vehicle. We must take care not to open Welhausen Road, or any other, to the whimsy of every agent who sees a vehicle using the roadways. Without the smell, nothing was unusual about Castaneda being on Welhausen Road.[4] If the agent's testimony that he smelled marijuana is believable, then he clearly had a reasonable suspicion that Castenada was engaged in narcotics activity. *See Brignoni–Ponce, supra,* 422 U.S. at 880, 95 S.Ct. at 2579–80 (a limited stop such as a *Terry* stop, or a roving border patrol investigatory stop, "may be justified on facts that do not

---

**4.** At the point when agent Moreno began following Castenada's truck, and before he smelled the marijuana, Moreno had no better reason to surmise that Castenada was engaged in criminal activity than he did to suspect the driver of any other vehicle on the road that night. To say that at this point the agent had a reasonable suspicion, sufficient to justify a roving border patrol investigatory stop, would be to say that he could have stopped any vehicle on that road

simply because smuggling was common on the road, because the road was fairly close to the Mexican border, and because the road happened to bypass two U.S. border checkpoints. Indeed, were we to accept this view of reasonable suspicion, nothing would prevent law enforcement agents from stopping any vehicle, on any back road in the Texas–Mexico border area; the roads all share the essential characteristics of Welhausen Road.

amount to the probable cause required for an arrest.").

### C.

■ At the suppression hearing, the marijuana odor issue predictably turned in part on the credibility of Moreno's testimony. The agent testified that the wind was from the south, that Castenada was travelling south, and that the breeze blew the marijuana's odor back to his car's open window. On cross-examination, he acknowledged that Castaneda's truck raised dust, but that the cross wind blew the dust away from his car window. Could the wind blow away the dust but not all the odor? After hearing the evidence, the district judge specifically chose to credit the agent's testimony, noting his perception of the agent's honesty and forthrightness, and speculating (needlessly) that such a large load of marijuana stored under the chassis of a moving vehicle might emit a stronger smell because it could have been heated.[5]

This appeal narrows to the limited record before us. We do not casually disturb a district court's credibility determinations. *See United States v. Rogers*, 906 F.2d 189, 190 (5 Cir.1990). Clear error is especially rigorous when applied to credibility determinations because the trier of fact has seen and judged the witnesses. *See Fernandez, supra*, 887 F.2d at 567. We, however, will intervene, and declare testimony incredible as a matter of law, "when testimony is so unbelievable on its face that it defies physical laws...."[6] *United States v. Lindell*, 881 F.2d 1313, 1322 (5 Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990).

■ We find it instructive to recall that on a motion to suppress the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was obtained in violation of his constitutional rights.[7] *See United States v. Charles*, 738 F.2d 686, 692 (5 Cir.1984). Castenada, therefore, had to establish that it was more likely than not that when agent Moreno stopped Castenada's truck, the agent did not have an objectively reasonable suspicion that Castenada was engaged in criminal activity. Moreno's testimony that he smelled a faint odor of marijuana while trailing Castenada would easily establish a reasonable suspicion of criminal activity unless it was not believable by the district court, or rose to the tainted level of *Lindell* so that we could say it should have been rejected as a matter of law.

We are mindful of the deference *Lindell* requires that we give the district court's decision to believe agent Moreno absent proof that his story defied physical laws; and we stress Castenada's burden of proof at the hearing. We emphasize that the focus of our inquiry is not whether we believe what the agent said, nor is it whether it seems to us highly unlikely that the agent could have detected the odor trailing Castenada's vehicle. Absent clear error, and we find none, those matters are for the district court. Rather, the question is whether, on the record before us, the witness testified to something that physical laws tell us could not have happened.

The record does not tell us how closely Moreno followed Castenada's truck when he smelled the marijuana. We are deprived of any information regarding the wind's strength or precise direction. We

---

**5.** The court speculated on this "cooking" notion despite the agent's testimony that when he discovered the marijuana, the drugs were still wrapped in plastic, were fresh, green and moist, and showed no evidence of having burned.

**6.** For example, an apple falling from a tree falls down, not up, and any witness who said the contrary would not be believable as a matter of law, not because his story is not credible. The witness in such a case would have testified to something that simply could not have happened. Whether odor in one's nose, but not dust in

one's face could not happen was not established, and is not clear enough to be repudiated under *Lindell*.

**7.** The government bears the burden of proof by a preponderance of the evidence when the suppression motion concerns the voluntariness of a confession, the voluntariness of consent to a warrantless search, the inevitable discovery of evidence or a waiver of *Miranda* rights. *See United States v. Hurtado*, 905 F.2d 74, 76 (5 Cir.1990) (en banc) (citing cases).

do not know whether the wind was swirling and changing directions ever so slightly, or whether the breeze could have stopped momentarily and allowed the smell to linger for the instant necessary to allow Moreno the opportunity to smell the marijuana.

Our decision today is driven by a limited record. We decide a narrow issue. We do not widen the searchlights on Welhausen Road. The district court is AFFIRMED.