**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-2636

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK EUGENE ROCH,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

(October 19, 1993)

Before JONES, and DeMOSS, Circuit Judges, and KAZEN[*], District
Judge.

DeMOSS, Circuit Judge:

## I.   FACTS AND PROCEDURAL HISTORY

On the morning of February 22, 1991, a confidential informant
told a Houston Police Department (HPD) officer that a man named
Frank planned to pass some forged checks and threatened to kill the
next cop he saw.  According to the informant, Frank possessed two
guns, drove a white and orange pickup truck, and was staying in a
local motel room with his girlfriend.  The informant described him

_____

[*]District Judge of the Southern District of Texas, sitting
by designation.

only as a blond, white male with tattoos on large portions of his body.

Based on the informant's tip, the HPD officer contacted Bureau of Alcohol, Tobacco, and Firearms (ATF) agent Larry Shiver that same morning. The officer told Shiver a suspect was staying at the Olly Motel in Houston, Texas. The HPD officer indicated he believed the suspect was armed and that he "felt this person was a convicted felon."[1].

Based on that information, Shiver and several other ATF agents set up surveillance on the motel which lasted for several hours. Around 4 p.m., the agents saw a white and orange pickup truck pull out of the motel parking lot with a male driver and a female passenger.

The agents followed the truck and very shortly it pulled into a gas station. At that time, Shiver requested a nearby HPD officer to "stop" the truck. As Roch exited the truck, the HPD officer pulled into the station, ordered Roch to the ground at gunpoint and handcuffed him. An ATF agent then approached the truck, peered

---

[1] At the suppression hearing Shiver testified that the information he had indicated the suspect had "prison-grade tatoos"; and that the term "prison-grade" refers to cheap, colorless tattoos that are used by prison inmate gangs to brand their members. Shiver further testified that he did not personally talk to the confidential informant, that the information passed to him by the HPD officer, particularly that there were tatoos, caused him to believe the suspect was a felon, and that neither he nor any other investigating officer saw any tatoos on Roch prior to his arrest. It appears therefore that the classification of the tatoos as being "prison grade" is an assumption which Shiver made but neither the confidential informant nor the HPD officer who relayed the information used those specific words.

inside the open door, and saw a purse on the front seat with the butt of a gun protruding from it. Afterwards, another ATF agent searched the truck and found a gym bag behind the front seat, which contained a .32 caliber gun. The agents seized both guns and took Roch to the Houston Police Department where he ultimately gave a videotaped confession.

The grand jury indicted Roch for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Roch moved to suppress the evidence on Fourth Amendment grounds; and an evidentiary hearing was held on that motion. The district court's oral findings of fact and conclusion of law regarding the suppression motion were sparse and somewhat ambiguous. Essentially, given the most supportive interpretation, the district court seemed to rule that while the ATF agents never had probable cause to seek an arrest warrant, the HPD officers did have reasonable suspicion to make an investigative stop and the weapons were discovered as a follow-up to that stop. Accordingly, the district court orally denied the motion. Roch then entered a conditional plea of guilty under Fed. R. Crim. P. 11(a)(2), expressly reserving his right to appeal the denial of his suppression motion.

The district court sentenced Roch to 235 months imprisonment followed by a five-year term of supervised release. The court also imposed a $25,000 probated fine, conditioned on Roch's continued payment of child support with his prison earnings. Roch timely appealed.

3

## II. DISCUSSION

Roch raises three issues on appeal: (1) Did his arrest and the search of his truck violate his Fourth Amendment rights? (2) Did the district court violate Rule 11 in failing to inform Roch of his fine range? (3) Did the district court err in imposing a fine on Roch? Because of our decision regarding Roch's Fourth Amendment claim, we do not address the second or third issue.

### 1. Burden of Proof

In reviewing a district court's ruling on a motion to suppress, we accept findings of fact unless clearly erroneous, but review *de novo* the ultimate conclusion on Fourth Amendment issues drawn from those facts. United States v. Diaz, 977 F.2d 163, 164 (5th Cir. 1992), United States v. Casteneda, 951 F.2d 44, 47 (5th Cir. 1992).

While in general, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights, there are several situations where the burden shifts to the government. United States v. De La Fuente, 548 F.2d 528, 533 (5th Cir.), cert. denied 431 U.S. 932 (1977).

As stated in De La Fuente, one of the other situations where the government bears the ultimate burden of proof is:

> if a defendant produces evidence that he was arrested or subject to search without a warrant, the burden shifts to the government to justify the warrantless search.

548 F.2d at 533.

4

Consequently, in the present case, where the facts are undisputed that the arrest and seizures were made without benefit of warrants of any kind, we hold the government bears the burden of proving it had reasonable suspicion to seize Roch.[2]

2. Reasonable Suspicion

In analyzing this case, we start with the determination that the actions taken by the arresting officer escalated instantly beyond what can be categorized as an "investigative stop." Roch voluntarily stopped his truck in a gas station and was outside his vehicle when police arrived on the scene. No questions were asked and no actions by Roch occurred which could be interpreted as a threat to the officer. The first words spoken by the police officer who had his gun drawn was a command for Roch to get face down on the ground, and then, without further inquiry, Roch was handcuffed. At this point, he was "arrested or seized" in the clearest sense of those words, without investigation of any kind. The critical issue in this case then becomes whether the ATF agents and HPD officers had reasonable suspicion to seize or arrest Roch for being a felon in possession of a firearm. Even an investigatory stop would be proper only if based on reasonable suspicion that

---

[2] While we recognize that <u>United States v. Casteneda</u>, 951 F.2d 44, 48 (5th Cir. 1992), contains inconsistent language regarding the burden of proof in suppression hearings, we do not find <u>Casteneda</u> to be controlling precedent. <u>Casteneda</u> followed the general rule (that the movant carries the burden of proof in a suppression hearing) without noting the important exception set out in <u>De La Fuente</u>, 548 F.2d at 533, (that the burden of proof shifts to the government in suppression hearings dealing with warrantless searches). <u>De La Fuente</u> remains as the controlling precedent for warrantless search suppression hearings, and we follow it here.

"criminal activity is afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). If an officer observes suspicious activity, the Fourth Amendment requirement is satisfied if there is a "minimal level of objective justification for the officer's actions, measured in the light of the totality of the circumstances." United States v. Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (citing United States v. Sokolow, 490 U.S. 1, 6-8 (1989)).

We note that the ATF agents and HPD officers did not observe any activity during the surveillance which would support a finding of reasonable suspicion that Roch was a felon in possession of a firearm. The surveillance of the motel began in the morning and continued through 4:00 PM. During that time, the agents did not see any tattoos on Roch's body corroborating his felon status or observe Roch carrying or attempting to conceal a gun. In fact, the surveillance failed to provide reasonable suspicion of any crime. The agents did not see Roch commit a criminal offense,[3] engage in any questionable behavior,[4] or break any traffic laws. The only activity the agents observed was a man and woman leaving the motel parking lot in an white and orange pickup truck, and driving to a filling station.

---

[3] See e.g., United States v. Lopez-Gonzales, 916 F.2d 1011, 1014 (5th Cir. 1990) (holding reasonable suspicion existed to justify a Terry stop near the Mexico border after United States Border Patrol officers observed illegal activity).

[4] See e.g., United States v. Watson, 953 F.2d 898, 896 (5th Cir. 1992) (holding reasonable suspicion existed when an officer, at 3:30 AM, saw an individual in a car appear to conceal or retrieve something on the car floor).

6

Reasonable suspicion, however, does not have to be based on a personal observation.  It can be based on information provided by a confidential informant, if the information possesses "an indicia of reliability."  Id.;  Adams v. Williams, 407 U.S. 143, 147 (1972).  In examining the totality of the circumstances, the "informant's veracity, reliability, and basis of knowledge ... [are] important factors; however, `a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or some other indicia of reliability.'"  United States v. Jackson, 818 F.2d 345, 348 (5th Cir. 1987) (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

The government contends the information it possessed had a sufficient indicia of reliability because Agent Shiver knew the informant personally, the informant had previously given reliable information that had resulted in warrants and convictions, and the information was based on direct contact with the suspect.

While first-hand interaction has often provided a sufficient basis of knowledge to find an indicia of reliability, we note the information provided by the informant here lacks considerable detail.  The suspect is only identified as Frank. His last name is not provided.  Frank is described only as a white male with blond hair with numerous tattoos.  Approximations of his height and weight are absent.  The pickup truck is only described by its orange and white color; there is no make, model, year of manufacture, or license number.

This information is significantly less detailed than other situations where reasonable suspicion has been found. In <u>United States v. Wangler</u>, 987 F.2d 228, 229 (5th Cir. 1993), a confidential informant told police that Wangler would deliver a shipment of cocaine at a particular convenience store and would be driving a 1987 Dodge pickup truck, license plate number 313-5LL. This Court held that after he observed Wangler arrive in the truck described by the informant and corroborated the tip through independent police work and direct observation, the officer had reasonable suspicion to stop Wangler.

In <u>Alabama v. White</u>, 110 S. Ct 2412 (1990), the police received an anonymous telephone tip that Vanesa White would be leaving Lynwood Terrace Apartment 235-C at a particular time in a brown Plymouth station wagon with a broken right taillight, that she would be carrying a brown attache case with an ounce of cocaine inside, and that she would be going to Dobey's Motel. The police went to the apartment complex where they saw White leave the apartment in the described brown station wagon and take the most direct route to the hotel. The police stopped White just short of the motel, and asked her if they could search her car. She agreed, and the police found marijuana and cocaine.

On appeal the Supreme Court held reasonable suspicion existed. The Court relied heavily on the anonymous tipster's prediction of White's *future* behavior, which was later corroborated by the observations of the police. The Court reasoned "[w]hat was important was the caller's ability to predict . . . [White's]

8

future behavior, because it demonstrated inside information--a special familiarity with . . . [White's] affairs." Id.

While the information received from the informant in this case may have been derived from direct contact with Roch, the absence of significant details and a prediction of future behavior prevents us from holding that such information provided a sufficient basis for a reasonable suspicion finding.

Sometimes independent police work can corroborate details in an informant's tip. See Illinois v. Gates, 462 U.S. 213, 241 (1983). In Gates, the Police Department of Bloomingdale, IL, received an anonymous letter stating the defendants, Lance and Susan Gates, were drug dealers. The tip detailed the defendants' plan to fly to Florida and drive back to Illinois with drugs hidden in the trunk of their car. Acting on the tip, the police officer determined the defendants' addresses and learned the husband had made a reservation to fly to Florida. Drug Enforcement Administration surveillance corroborated the husband's presence on the flight to Florida, his departure from Florida heading north in a car bearing Illinois license plates, and other significant details in the letter. The Court held that a state magistrate had probable cause to issue a warrant to search their car and home based on the corroboration of the information in the anonymous letter.

Although reasonable suspicion is a substantially lower standard than probable cause,[5] it still requires an indicia of reliability demonstrated by the observation of sufficient details that corroborate the informant's tip. In this case, while the agents could corroborate that a white man was driving a white and orange truck, they made no attempt to corroborate the driver's identity, his felon status, or his future activity. During the several hours that the pickup truck was under surveillance at the motel, neither HPD nor ATF agents made any effort to run a title check on the truck through its license plates or to check the registration list in the office of the motel to determine the names of the occupants who arrived in the truck. The HPD officer who actually put Roch on the ground and handcuffed him did not testify at the suppression hearing; so there is no way to know what information or instructions, if any, he had when he made this "seizure" of the defendant. The record would infer however that the HPD officer asked no questions and received no further information which would corroborate any of the informant's information prior to putting Roch on the ground at gun point and handcuffing him.

The final case relied upon by the government is Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). In that case, the Court held that a known informant's tip to a police officer that a suspect sitting in a nearby vehicle was

---

[5] United States v. Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc).

carrying narcotics and had a gun at his waist "carried enough indicia of reliability to justify the officer's forcible stop of Williams." Id. at 147.

Adams is distinguishable from the present case. In Adams, the information justifying criminal activity as to which the government asserted reasonable suspicion concerned the possession of narcotics, an act that is *per se* illegal. In this case, the criminal activity as to which the government sought to raise a reasonable suspicion was that Roch was a felon and possessed a gun. The critical element necessary to such suspicion is that the possessor is a felon. In this case, absent any corroboration of Roch's status as a convicted felon, the government had no reasonable suspicion that the criminal activity suggested by the informant was afoot.

### III. CONCLUSION

Because the government failed to meet its burden to show that the ATF agents and HPD officers had reasonable suspicion to seize Roch for being a felon in possession of a firearm, we REVERSE the conviction.