**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-60305**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**STERLING BELL,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(4:97-CR-27-BS)**

_____

June 21, 1999

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Sterling Bell challenges his conviction for abusive sexual contact with a child in violation of 18 U.S.C. § 2244(a)(1), basing reversible error on hearsay testimony by the child's examining physician and insufficiency of the evidence. We AFFIRM.

I.

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Bell resided with his wife, Alma Bell, on the Choctaw Indian Reservation in Mississippi. Frequent visitors at their home were Ashley and Crystal Martin, the young daughters of Phoebe Martin, Alma Bell's niece. All are Native Americans.

On 7 February 1997, Ashley and Crystal Martin spent the night with the Bells. Sometime during the night, the children got into bed with the Bells. It was located against a wall; Alma Bell was on the outermost side, with Crystal Martin next to her, and with Bell between Crystal and Ashley Martin, who was closest to the wall. Alma Bell testified that, at some point, she felt that "somebody was telling [her] to wake up and look over to where Sterling [Bell] was sleeping". She looked over at Bell, whom she could see because of a security light shining through the window, and saw him kissing Ashley Martin (then five years of age) and noticed that his hand, which was under the bedcover, "was moving on [the child's] private part".

Alma Bell removed the cover and ordered the girls to leave the bed; she did not then confront Bell or later that morning. But, that evening, she told the child's mother, Phoebe Martin, what she had observed. Phoebe Martin testified that she asked Ashley Martin about what had happened; and that the child cried before telling her what had occurred.

Phoebe Martin took the child to the health center located at the reservation; she was examined by Dr. Coats. The doctor was advised that Bell had touched Ashley Martin in her genital area.

Bell was indicted for abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(1).[2] **Found guilty by a jury, his sentence includes 30 months imprisonment.**

## II.

**Bell claims inadmissible hearsay and insufficient evidence. It is undisputed that he and the child are Native Americans; that the offense occurred in Indian country; and that, at the time of the incident, the child was under the age of 12.** *See* **18 U.S.C. § 1153 (federal jurisdiction); 18 U.S.C. § 2244(c) ("If the sexual contact that violates this section is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section").**

### A.

**Concerning Dr. Coats' testimony as to what Ashley Martin related to the doctor through a translator, Bell claims**

___

[2]Bell was indicted on two such counts; the second as a result of a separate incident involving the same child. The court granted a judgment of acquittal on that count, following the Government's case.

inadmissible **"double hearsay"**.  Because of the broad discretion

afforded district courts in ruling on evidence, "[w]e will reverse

... only when the court has clearly abused its discretion and a

substantial right of a party is affected".  ***Tamez v. City of San

Marcos***, 118 F.3d 1085, 1098 (5th Cir. 1997), *cert. denied*, 118 S.

Ct. 1073 (1998); *see also* FED. R. EVID. 103; ***United States v. Liu***,

960 F.2d 449, 452 (5th Cir. 1992); ***United States v. Follin***, 979

F.2d 369, 375 (5th Cir. 1992).

Dr. Coats testified that Ashley Martin's mother and an aunt

presented the child for a medical examination; that the child spoke

in Choctaw; and that either the mother or aunt translated, because

the doctor does not speak Choctaw.  Bell's double hearsay objection

was overruled.

Dr. Coats then testified that, through the translator (mother

or aunt), Ashley Martin stated that her uncle had "touched" her,

and had placed her hand over her external genital area to

demonstrate where; and that one of the two women told Dr. Coats

that Bell was Ashley Martin's uncle.  A medical examination did not

reveal any physical evidence of sexual contact.

Phoebe Martin testified that Alma Bell had *not* gone to the

clinic with them; that only she, Dr. Coats, and a nurse were

present when the doctor examined Ashley Martin; that the child told

- 4 -

Dr. Coats, *in English*, what had happened to her; and that Phoebe Martin had translated only when the doctor did not understand what the child was saying. Although she testified that her translations had been correct, Phoebe Martin insisted that Dr. Coats had received almost all of the information directly from the child.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted". FED. R. EVID. 801(c). Bell asserts that there are two levels of hearsay in Dr. Coats' testimony: what the child told the translator; and what the translator then told the doctor. "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in [the Federal Rules of Evidence]." FED. R. EVID. 805.

Certain statements, although hearsay, are excepted from the general rule, *see* Rule 802, prohibiting the admission of hearsay testimony. Rule 803 provides several exceptions for which the availability of the declarant to testify is immaterial. One is for statements

> made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as

- 5 -

> reasonably pertinent to diagnosis or treatment.

FED. R. EVID. 803(4). Bell does not contest the Rule 803(4) admissibility of statements to physicians made by children identifying their abuser.

Instead, Bell objected on the basis that the statements were made through a translator, because

> this seem[ed] to be ... hearsay within ... hearsay. The child spoke Choctaw, obviously to someone [who] spoke English, somebody else who then related to [sic] English, I've got at least two people here I can't cross-examine.

The district court responded that it was

> going to overrule the objection under the medical history ... exception to the hearsay rule. The court will assume that the translation of the child's words [was] correct since this was for medical purposes, same as though the medical history itself was.

For whether the translator added an additional level of inadmissible hearsay, we must determine the admissibility of "extrajudicial statements made through an interpreter when the testifying witness was unable to understand the original language of the declarant and can testify only to the words of the interpreter". *United States v. Nazemian*, 948 F.2d 522, 526 (9th Cir. 1991), *cert. denied*, 506 U.S. 835 (1992).

Our court addressed a similar issue in *United States v. Cordero*, 18 F.3d 1248 (5th Cir. 1994), in which the defendant's extrajudicial non-English statement was introduced at trial through the testimony of a person who had received a contemporaneous translation. Citing to *Nazemian*, 948 F.2d at 525-27, and *United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991), in which the courts treated interpreters' translations as those of declarant, our court stated:

> We find the reasoning of the Second and Ninth Circuits persuasive, and we adopt it. Except in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation [does] not create an additional level of hearsay.

*Cordero*, 18 F.3d at 1253 (internal quotations omitted, alteration in original).

In *Cordero*, because the defendant failed to object, our court reviewed only for plain error. Of course, by objecting, Bell preserved our normal abuse of discretion review. In any event, our court adopted the Second Circuit's view in *Lopez* that an interpreter is merely a conduit, absent "unusual circumstances". *Id.*

Concerning the "unusual circumstances" exception noted by our court in *Cordero*, other circuits have generally evaluated whether

the appellant alleged or demonstrated any bias on the part of the interpreter or any inaccuracies in the interpretation. *See* **Lopez**, 937 F.2d at 724 (defendants "offer[ed] no reason to doubt the accuracy of [the] translation"); **United States v. Koskerides**, 877 F.2d 1129, 1135 (2d Cir. 1989) ("There is nothing in the record to suggest that the interpreter had any motive to mislead or distort, and there is no indication that the translation was inaccurate"); **DCS Sanitation Management, Inc. v. Occupational Safety and Health Review Comm'n**, 82 F.3d 812, 816 (8th Cir. 1996) ("DCS raised no questions regarding the abilities or biases of the interpreter"); **Nazemian**, 948 F.2d at 527 (noting that defendant did not present evidence of bias or incompetence on part of interpreter).

Bell does not claim any "unusual circumstances", including any bias or incompetence on the part of the interpreter.[3] **In sum, Dr. Coats' testimony was admissible: (1) the statements to her by the**

---

[3]Along this line, it is unclear who (if anyone) translated for the child. Her mother testified that, during the medical examination, she provided any necessary interpretation. Her interest, as the child's mother, would be to provide the most complete and accurate information. Although Bell's counsel opined at oral argument that any mother would be biased, given the nature of the charges, he did not point to any evidence indicating that the mother had any bias which would compel her to implicate Bell. Also, even if the aunt/Bell's wife translated, the mother was present and would have been aware of any defects in the translation. Further, there was no evidence that the mother was not fluent in Choctaw, or unable to provide an accurate translation.

child regarding the identity of her abuser were admissible under Rule 803(4); and (2) the statements made through the interpreter were not hearsay.

## B.

Bell preserved the sufficiency of the evidence issue by properly moving for judgment of acquittal. FED. R. CRIM. P. 29 (a). The well-established standard for reviewing such claims is whether, viewing the evidence, and all inferences reasonably drawn from it, in the light most favorable to the Government, a rational trier of fact could have found the essential elements of the offenses *beyond a reasonable doubt. E.g., United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992). Along this line, our role does not include weighing the evidence or making credibility determinations of the witnesses. *E.g., United States v. Myers*, 104 F.3d 76, 78-79 (5th Cir.), *cert. denied*, 117 S. Ct. 1709 (1997). Restated, we consider whether the trier of fact made a rational decision, not whether it correctly determined guilt or innocence. *E.g., United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995). But, consistent with the reasonable doubt standard, we will reverse a conviction "if the evidence construed in favor of the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of

innocence of the crime charged". *Id.* (internal quotation and citations omitted).

Bell was convicted under 18 U.S.C. § 2244(a)(1), which makes it a crime to "knowingly engage[] in or cause[] sexual contact with or by another person, if so to do would violate – (1) section 2241 of this title had the sexual contact been a sexual act". The referenced § 2241 proscribes "knowingly caus[ing] another person to engage in a sexual act – (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping; or attempts to do so". 18 U.S.C. § 2241(a). Bell maintains that the Government failed to prove, beyond a reasonable doubt, both that he engaged in "sexual contact" and that he had the requisite intent. Bell did *not* testify or otherwise present evidence.

### 1.

"Sexual contact" is defined as, *inter alia*, "the intentional touching, either directly or through the clothing, of the genitalia ... of any person with an intent to abuse, ... or gratify the sexual desire of any person". 18 U.S.C. § 2246(3).

At trial, six-year-old Ashley Martin testified in English; she was very shy and inarticulate. She did not testify under oath, but

told the court that it was a bad thing to "tell a story", and that she would tell the truth. She testified that Bell had touched her "in her front" while they were sleeping in the bed. She pointed to where Bell had touched her, but the record does not state where she pointed. She stepped out of the witness box so that the jury could see her body and was asked by the Government to "point to the place" a second time; but, she did not respond to the request. Bell's counsel did not cross-examine her.

Following the close of the evidence and outside the presence of the jury, the district court noted for the record that the child had been "extremely reluctant to talk"; that most of her answers had been either nods or shakes of the head; that she had used "very few words"; and that her demeanor indicated that she was "overwhelmed" by the courtroom. The court stated that it intended no inferences to be drawn from its comments.

Alma Bell testified that she saw Bell kiss the child and move his hand, under the bedcover, over her genital area; the child's mother testified that the child told her what happened (the mother did not testify as to what the child said); and Dr. Coats testified that the child said that Bell had touched her genital area.

Bell claims that the child's testimony was insufficient; Alma Bell was biased against him; and it was physically impossible for her to see through the bedcover.

a.

Bell's contentions regarding the weight to be given the testimony by the child and Alma Bell lack merit because, as noted, credibility and weight determinations are within the sole province of the jury.  Those were issues for Bell's counsel to exploit during cross-examination and arguments to the jury.

As noted, Bell did not cross-examine the child.  And, in addition to challenging her credibility, Bell's counsel questioned Alma Bell regarding bias, such as because of an alleged confrontation between Bell and one of her sons from a previous marriage.

b.

Bell asserts that it was physically impossible for Alma Bell to observe his hand through the bedcover.  "Unless a witness's testimony is incredible or patently unbelievable, we must accept the jury's credibility determinations." *United States v. Lopez*, 74 F.3d 575, 578 (5th Cir.), *cert. denied*, 517 U.S. 1228 (1996).  In this regard, we "will ... declare testimony incredible as a matter of law[] when the testimony is so unbelievable on its face that it

defies physical laws". *United States v. Casteneda*, 951 F.2d 44, 48 (5th Cir. 1992)(internal quotation omitted). *See also **United States v. Kelley***, 140 F.3d 596, 607-08 (5th Cir.), *cert. denied*, 119 S. Ct. 186, 247 (1998); ***United States v. Medina***, 161 F.3d 867 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1344 (1999).

In ***Casteneda***, the defendant challenged the reasonableness of the border patrol stop that resulted in the discovery of over 200 pounds of marijuana hidden under a truck. ***Casteneda***, 951 F.2d at 46. The Border Patrol Agent testified that he made the stop because, as he was following the truck, "he could detect the faint odor of marijuana". ***Id.*** The district court, although not convinced that it was possible to smell marijuana under the circumstances, credited the Agent's testimony based on the court's observations of the Agent and belief in the Agent's credibility. ***Id.***

On appeal, the defendant claimed that it was impossible for the Agent to have smelled the marijuana, especially considering the Agent's testimony about a cross-wind. ***Id.*** at 48. Our court affirmed, stating that the factual finding was not clearly erroneous; and that the Agent had not "testified to something the physical laws tell us could not have happened". ***Id.*** *See also **United States v. Jaras***, 86 F.3d 383, 387-88 (5th Cir. 1996)

- 13 -

(testimony of co-defendant not incredible where co-defendant lied about existence of plea agreement with the Government).

Alma Bell testified that she could see Bell's hand because the bedcover was thin. Bell cross-examined her regarding that testimony, in the light of the incident having occurred in February, when it was cold. The bedcover was not introduced into evidence, so the only evidence regarding its thickness, and Alma Bell's ability to see Bell's hand through it, was her testimony, which was properly evaluated by the jury. We cannot say that her testimony was incredible.

In sum, three witnesses testified that Bell touched the child: Alma Bell, who was present when the incident occurred; the child/victim; and Dr. Coats, who was told (through an interpreter) by the child that Bell touched her genitals. Viewing their testimony in the light most favorable to the verdict, a reasonable juror could have concluded that Bell did "engage[] in or cause[] sexual contact". 18 U.S.C. § 2244(a).

2.

Section 2246 states that the requisite intent for "sexual contact" is, *inter alia*, "to arouse or gratify the sexual desire of any person". The indictment charged Bell with "intentional touching of the genitalia of [the child] ... with the intent to

- 14 -

gratify [his] sexual desire". Bell contends that there was insufficient evidence of such intent, asserting that there was no evidence of it.

"[K]nowledge and intent, because of their nature, must largely be proved by circumstantial evidence." *United States v. Mitchell*, 876 F.2d 1178, 1181 (5th Cir. 1989) (quoting *Johnson v. Wright*, 509 F.2d 828 (5th Cir. 1975)); *see also United States v. Haas*, 171 F.3d 259, 265-66 (5th Cir. 1999) ("The government may, of course, prove the defendant's criminal intent by way of circumstantial evidence"); *United States v. Pettigrew*, 77 F.3d 1500, 1522 (5th Cir. 1996). "The intent necessary to support a conviction can be demonstrated by direct or circumstantial evidence that allows an inference of an unlawful intent, and not every hypothesis of innocence need be excluded." *United States v. Aggarwal*, 17 F.3d 737, 740 (5th Cir. 1994).

There was sufficient circumstantial evidence of the requisite intent. In addition to testifying that she saw Bell touching the child, Alma Bell also testified that he was kissing her.

In the light of this evidence, the jury could reasonably find that Bell intended to gratify his sexual desires. For example, in *United States v. Bailey*, 111 F.3d 1229, 1235 (5th Cir.), *cert. denied*, 118 S. Ct. 327 (1997), our court found that there was

- 15 -

sufficient evidence that the defendant entered a dwelling with the intent to commit sexual assault where the evidence showed that he entered at night wearing a ski mask, but no shirt, and pulled on the victim's toe.

In sum, the evidence was sufficient for the jury to find each of the elements of the crime beyond a reasonable doubt. Bell's sufficiency challenge fails.

## III.

For the foregoing reasons, the judgment is

*AFFIRMED.*