IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-51004
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SUSAN DELGADO-ORTEGA,

Defendant-Appellant.

------------------------------------------------------------------

_____

97-51013
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANGEL MARQUEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Western District of Texas
(P-97-CR-155 & P-97-CR-149)
_____

October 22, 1999

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges.

E. GRADY JOLLY:[*]

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This consolidated appeal[1] concerns whether border patrol agents had a reasonable suspicion of illegal conduct when they separately stopped Susan Delgado-Ortega and Miguel Angel Marquez. Each defendant was arrested for possession of marijuana with intent to distribute.

I

A

United States Border Patrol Agents Steven Anderson and Lauren Bennett were observing traffic on Highway 118, 25 miles south of Alpine, Texas, at about 7:00 a.m. on September 9, 1997. Susan Delgado-Ortega happened to be on the highway that morning with four sacks of marijuana hidden in her trunk. When the agents saw her car approaching, they pulled off to the side of the road. They angled their car ahead of her car, and when it drove by, they illuminated the road with their headlights.

The headlights of Delgado's car dipped immediately, indicating a sudden drop in speed. The agents noticed that only one person was in the car, a Hispanic woman. They pulled behind and followed the car to check its registration. Seeing the police behind her, Delgado slowed from the speed limit of 70 mph to about 50 mph and began to weave between the center line and the shoulder. Anderson

---

[1]On October 26, 1998, the government moved to consolidate Marquez's appeal with Delgado-Ortega's appeal, because: (1) Delgado and Marquez each appeal the denial of a motion to suppress; (2) the facts are similar; (3) the same district judge held the suppression hearings on the same day; and (4) Delgado and Marquez raise the same issues and make the same arguments on appeal. We granted the unopposed motion.

concluded that Delgado was "preoccupied with [the agents] behind her."

Ranchers and tourists make up a majority of traffic in the area. But according to Anderson, an agent with ten months' experience, since ranchers generally drive dusty cars or trucks, and tourists often have luggage visible and do not travel alone, Delgado did not look like either one.

The agents decided to stop Delgado for an immigration check. As Anderson approached the car and began talking to Delgado, she kept both hands on the wheel and did not make eye contact. Bennett, a canine handler, brought a police dog over to the car. The dog alerted the agents to contraband in the trunk, and the agents asked Delgado if they could search her car. She agreed. The agents found four large white bags smelling strongly of marijuana in the trunk. They then arrested Delgado.

Delgado was indicted for possession of marijuana with intent to distribute. She moved to suppress the evidence from the search, but the district court denied the motion. The court held that four factors created a reasonable suspicion of illegal activity, justifying the stop: (1) the time of day; (2) Delgado's extreme nervousness when she noticed the agent following her; (3) Highway 118's reputation for drug and alien smuggling; and (4) Anderson's experience. After the trial court denied the motion to suppress, Delgado entered a conditional guilty plea but reserved her right to appeal the suppression issue.

The issue that divides Delgado and the government on appeal is whether the totality of the circumstances raised a reasonable suspicion of illegality. Delgado first asserts that Anderson never testified *why* a car traveling on Highway 118 at 7:00 a.m. was "suspicious." The government counters that, based on the agent's experience, the traffic on Highway 118 at 7:00 a.m. consists of ranchers and tourists, and Delgado appeared to be neither.

Second, Delgado contends that there is no evidence that she was "extremely nervous"; Anderson merely testified that Delgado was "preoccupied with us behind her," and that "[he] thought maybe she was nervous." The government responds that Delgado's rapid deceleration and subsequent weaving exhibited extreme nervousness.

Third, Delgado argues that even if she appeared extremely nervous, that does not raise a reasonable suspicion of illegality. She was alone on a dark, relatively deserted road when a car pulled out of the ditch on the other side of the road and began following her. The government counters that Delgado's behavior, when combined with the other factors, raised a reasonable suspicion.

Fourth, Delgado asserts that being on Highway 118 does not raise a reasonable suspicion of illegal activity. Anderson stopped her sixty miles from the border, and there are a multitude locations north of the border from which Delgado could have started her trip. The government responds by pointing to Highway 118's reputation for drug smuggling and illegal immigration.

B

4

At about 9:15 a.m. on August 18, 1997, Border Patrol Agent Sam Ferguson ("Ferguson") was traveling south on Highway 118 near Alpine, Texas. He noticed a pickup truck pulling a horse trailer going north. The truck's driver, Miguel Angel Marquez, was startled at the sight of the border patrol car and jerked the wheel. Suspicious, Ferguson turned to follow the truck. Though it had increased its speed, Ferguson caught up two or three miles later. As he did so, the truck slowed to well below the speed limit. Ferguson pulled close to check the license number, then backed off.

The car was registered to a person in Odessa, Texas, but Ferguson noticed that Marquez wore clothes like those of someone from Mexico would wear. Ferguson later testified that Marquez "watch[ed Ferguson] pretty steadily in the mirrors . . . to the point to where he was kind of weaving around." Ferguson also testified that a "large amount" of alien and narcotic smuggling occurs on Highway 118, which is a direct route from the border. He added that from his eleven years of experience, he knew that horse trailers are sometimes used for smuggling, and that the border agents had been tipped earlier in the month to watch for trailers smuggling contraband.

Ferguson decided to stop the truck and activated his grill lights. The truck continued for two or three blocks until it met a Border Patrol car, driven by Agent Barrea, coming from the opposite direction. Marquez then got out of his car and walked to

5

the police car. Ferguson noticed that Marquez's hands were shaking. When Ferguson asked Marquez his citizenship status, the driver handed him an employment authorization document. While Ferguson was questioning Marquez, Barrea approached with a police dog that indicated there were drugs in the trailer. Barrea then saw bundles of what appeared to be drugs in the back of the trailer.

The agents arrested Marquez and found 778 pounds of marijuana in his truck after taking it to the Border Patrol station. Marquez was indicted for possession of marijuana with intent to distribute. He moved to suppress the evidence from the search, but the district court denied the motion. The court held that five factors created a reasonable suspicion of illegal activity: (1) that Marquez had a horse trailer; (2) that he appeared unusually startled by the Border Patrol car; (3) that the truck was registered to someone in Odessa, Texas, but the driver wore a distinctive type of clothing from Mexico; (4) that Marquez watched Ferguson through the mirror; and (5) that Ferguson was experienced. After denial of the motion, Marquez entered a conditional plea of guilty, reserving his right to appeal the suppression issue.

On appeal, Marquez argues that the totality of the circumstances did not raise reasonable suspicion of illegality. First, Marquez asserts that Ferguson's past experience with horse trailers used for smuggling did not justify the stop. Smugglers have probably used every vehicle on the road at one time or another. Second, Marquez contends that even if he appeared nervous

6

or startled, that does not raise a reasonable suspicion. Highway 118 is "very hilly and [has] lots of curves," and Ferguson admitted that he and Marquez could not see each other until they were "almost right together." Marquez's reaction to suddenly seeing another car was reasonable. Third, Marquez asserts that his clothing did not warrant suspicion, because even if the clothing did appear Mexican, that was not uncommon in that area of Texas. Fourth, Marquez argues that watchfulness alone does not raise reasonable suspicion. Fifth, Marquez argues that each of these factors is so insignificant that, even when viewed in combination and in the light of Ferguson's experience, they could not provide a basis for reasonable suspicion of illegal activity.

The government disagrees with each of the arguments and contends that, individually and together, they raise such a reasonable suspicion.

## II

### A

Whether reasonable suspicion existed to stop a vehicle is a conclusion of law. United States v. Inocencio, 40 F.3d 716, 721 (5th Cir. 1994). We review conclusions of law de novo and view the evidence presented at a pretrial hearing in the light most favorable to the prevailing party. Id.

Warrantless stops by border patrol agents not conducted at the border or its functional equivalent must be supported by reasonable suspicion of illegal activity. Id. at 722. A finding of

7

reasonable suspicion must be based on the "totality of the circumstances known to the agent and the agent's experience in evaluating such circumstances." United States v. Casteneda, 951 F.2d 44, 47 (5th Cir. 1992). This court examines various factors, including: (1)whether the vehicle originated its trip at the border; (2)the characteristics of the area; (3)usual traffic patterns; (4)the agent's experience in detecting illegal activity; (5)behavior of the driver; (6)characteristics of the vehicle; and (7)recent drug or alien smuggling in the area. United States v. Brigoni-Ponce, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

We do not believe that the agents had a reasonable suspicion of illegality in either instance. Though Marquez presents a closer case, primarily due to the agent's experience, even there, we do not find sufficient evidence to warrant a search of the vehicle.

B

(1)

None of the four factors, either individually or in combination, that the district court cited in denying Delgado's motion to suppress provides a reasonable suspicion of illegality. One factor was Delgado's nervousness. But even an innocent woman, driving by herself on a deserted highway at dawn, would have been reasonably concerned with a car following her in the manner the agents used. See United States v. Jones, 149 F.3d 364, 370 (5th Cir. 1998) (noting that "when the officer's actions are such that

8

any driver, whether innocent or guilty would be preoccupied with his presence, then any inference that might be drawn from the driver's behavior is destroyed."). Furthermore, neither the time of day, nor the highway's reputation as a smuggling route, in and of themselves, justifies the stop. Finally, Anderson's relative inexperience makes it less likely his suspicion was warranted.

It is true, as the government points out, "the fact that a vehicle may have recently crossed the border is a vital element in making an investigatory stop." Inocencio, 40 F.3d at 722 n.6. But Delgado was too far from the border, with enough alternate routes that she could have used, for Anderson to assume she had come directly from Mexico. See Melendez-Gonzalez, 727 F.2d at 411 (noting that absent proximity to the border, the agent must have some independent reason for concluding that the trip originated at the border); Jones, 149 F.3d at 368 (same).

Without any additional justification for the stop of Delgado, Anderson did not have a reasonable suspicion of illegality. The motion to suppress should have been granted.

(2)

We have similar concerns about Marquez's stop. First, mere use of a horse trailer would not raise a reasonable suspicion, even in the face of the surrounding circumstances. Since there was nothing about the trailer that made it particularly suspicious apart from other trailers on the road, its use could not raise a reasonable suspicion. United States v. Moreno-Chaparro, 180 F.3d

629, 632-33 (5th Cir. 1998).  The vague tip concerning horse trailers that the agents had received weeks before did not change that.  We have traditionally required a more specific tip related to time or a particular vehicle.  See United States v. Villalobos, 161 F.3d 285, 290-91 (5th Cir. 1998) (noting that a two-month-old tip concerning a specific car with a specific license plate number, in combination with other factors, raised reasonable suspicion); Jones, 149 F.3d at 370 (noting that a DEA tip that smugglers were going through the nearby checkpoint at shift change combined with other factors raised reasonable suspicion).

Second, Marquez's jerk of the wheel does not raise suspicion. It appears from the record that Marquez and the agents surprised each other on the road.  A sudden, minor swerve in those situations is not uncommon.

Third, though the record does not tell us what type of clothing marks a person as Mexican, we doubt that it is very different from attire worn just north of the U.S.-Mexican border. Inferring suspicion on those grounds is not reasonable.  See Jones, 149 F.3d at 369 ("[T]he fact that one is of Mexican national origin does not create reasonable suspicion that one is an illegal alien, since, in border areas, there are far more legal citizens than illegal aliens of Mexican national origin.").

Fourth, we cannot agree that by looking in his rearview mirror at the Border Patrol car that was following him Marquez was acting suspiciously.  See United States v. Moreno-Chaparro, 180 F.3d at

10

632 (noting that "the government has relied on both sides . . . on some occasions contending that it is suspicious to look and on other occasions insisting that it is suspicious not to look. [I]n the ordinary case, whether a driver looks at an officer or fails to look at an officer, taken alone or in combination with other factors, should be accorded little weight.").

It is true that Ferguson's extensive experience weighs in favor of the reasonableness of his stop of Marquez. But experience does not give experienced agents free reign to stop whichever drivers they choose. There still needs to be a reasonable suspicion, and we did not find one in this case.

In sum, the district court's denials of the defendants' motions to suppress the evidence are REVERSED. The defendants had entered guilty pleas conditional upon those denials, and the district court convicted the defendants based on those guilty pleas. The defendants' convictions are therefore VACATED, and the cases are REMANDED for further appropriate proceedings.

REVERSED, VACATED, and REMANDED.