# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-70003

ALVIN ANDREW KELLY

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas, Beaumont
USDC No. 1:00CV636

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Petitioner Alvin Andrew Kelly (Kelly) appeals the denial of federal habeas relief after remand for an evidentiary hearing with respect to his claims of knowing use of perjured testimony and failure to disclose material exculpatory evidence. The sole issue on appeal is whether the district court clearly erred in finding that a witness did not recant her trial testimony. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.     BACKGROUND

On May 1, 1984, the bodies of Jerry Morgan, his wife Brenda, and their twenty-two month old son Devin were discovered in their home in Gregg County, Texas.  All three had suffered fatal gunshot wounds.  Jerry and Brenda Morgan were City Marshal Reserve Officers.  The Morgans' car, several guns and other items had been taken.  At the time of the murders, Kelly was married to Cynthia Kelly (Cynthia).  The murders went unsolved for six years.

In 1990, a man named Chris Vickery called the Gregg County Sheriff's Office and stated that his former wife, Cynthia, had information.[1]  At this point in time, Cynthia and Kelly were divorced, and Cynthia was living in Michigan.  Kelly was serving a 30-year sentence for an unrelated murder in Texas.  The authorities interviewed Cynthia and after further investigation obtained an indictment charging Kelly with the capital murder of Devin Morgan during the course of the robbery of Jerry Morgan.

At trial, Kelly's brother Steven Kelly (Steven) testified that he and Kelly were in the business of selling drugs.  Steven had witnessed Kelly threaten to kill Jerry Morgan.  Steven also testified that Kelly confessed to Steven that he killed the Morgans.  Cynthia testified that on the night of the murders, after hearing gunfire, she entered the Morgan home and witnessed Kelly shoot Brenda and Devin Morgan.   Kelly was convicted of capital murder in Texas and sentenced to death.  After exhausting his state habeas remedies, Kelly filed a petition for federal habeas relief.  The district court denied relief, and Kelly appealed.

This Court affirmed in part and reversed in part, finding that an evidentiary hearing was necessary with respect to whether Cynthia had recanted her testimony in a conversation with Kelly's sister, Nancy Brown

---

[1]   Vickery was Cynthia's first husband.

(Nancy).[2] On remand, after conducting an evidentiary hearing, the district court found that Cynthia had not recanted her trial testimony. The district court denied relief and granted a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(2). Kelly v. Quarterman, 2007 WL 541941 (E.D. Tex. Feb. 15, 2007). Kelly now appeals.

II.    STANDARD OF REVIEW

Kelly filed his § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). The petition, therefore, is subject to AEDPA. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). Pursuant to the federal habeas statute, as amended by AEDPA, 28 U.S.C. § 2254(d), we defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 404-08 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable. Id. at 409.

Additionally, here, the district court conducted an evidentiary hearing and made findings. We review the federal district court's findings of fact for clear

---

[2] A more detailed history of this case can be found in our prior opinions. Kelly v. Dretke, 2006 WL 1049049 (5th Cir. April 20, 2006); Kelly v. Dretke, 111 F. App'x. 199 (5th Cir. 2004); Kelly v. Cockrell, 72 F. App'x 67 (5th Cir. 2003).

error and conclusions of law de novo.  Horn v. Quarterman, 508 F.3d 306, 311 (5th Cir. 2007), petition for cert. filed, (U.S. Feb. 6, 2008) (No. 07-9537).

III.    ANALYSIS

In support of Kelly's claims that the State (1) used perjured testimony to convict him and (2)  failed to disclose material exculpatory evidence, he alleged that Cynthia had recanted her trial testimony.  More specifically, Kelly alleged that Cynthia told his sister, Nancy, that he did not kill Devin Morgan.

During the evidentiary hearing, Nancy testified that while she was visiting Kelly on death row she met Tom Sullivan, an attorney, who asked her: "Do you know anything you can do to help your brother?"  He also said Kelly needed such help "quickly."  Nancy testified as follows:

> I had an impression as I prayed about [Kelly's] case and asked the Lord to show me what had really happened to my brother and what the truth was in this case.  And I had an impression in my heart one morning from God that if I would find Cynthia that she would bare her heart to me, that it was more than what was on the paper.

Although Nancy had met Cynthia on only one occasion, she obtained Cynthia's address and she and her husband Conley Brown (Conley) traveled to Cynthia's house in Georgia for an unannounced visit. Their visit was cordial and lasted for several hours.  Nancy testified that while she and Cynthia were alone, Cynthia said:  "This is between you, me and God."  Cynthia then told Nancy that Kelly did not kill the baby, Devin Morgan.

Conley testified at the hearing that he and his wife Nancy went to visit Cynthia "because after talking to [Kelly] we were convinced that he was innocent and that [Cynthia] had lied on the stand" at Kelly's murder trial.  Conley also thought Cynthia had lied based on her "past character,"  presumably referring to her past drug use.  Conley further testified that after the visit they wrote letters to Cynthia in an attempt to "get her to come forth with the truth of what she had told us."  After her refusal to come to Texas and tell the authorities

Kelly had not killed the baby, Conley testified that they did not have any more contact with Cynthia.

Kelly testified at the evidentiary hearing that he had never met the Morgans and had not killed them. He admitted his involvement in the unrelated murder case, in which he had pleaded guilty. He also admitted that he had been a drug dealer but claimed to have "made a conversion to Christ." He claimed that on the night of the instant murders, he was changing the engine in a truck with a man named Johnny Waller. Kelly claimed that Cynthia and her sister Violet Brownfield lied in their testimony at his trial. He also claimed his brother Steven lied while testifying at his murder trial.

Cynthia testified that Nancy and Conley did visit her at her home in Georgia but denied saying that Kelly did not shoot the baby. She also denied telling anyone that she had shot any of the victims or that she had been threatened by law enforcement authorities. Cynthia did admit that she previously had used drugs but had not for six years.

Russell Potts, the chief investigator for the Gregg County District Attorney's Office, testified that he traveled to Michigan to meet with Cynthia during his investigation with respect to the Morgan case. He testified that Cynthia was cooperative and willing to testify but hesitant because of her fear of retaliation from Kelly. He did not threaten Cynthia and was not aware of any other law enforcement officer threatening her.

Cynthia's sister, Beverly Frank (Frank) testified by deposition that she had previously signed an affidavit in which she stated that Cynthia had claimed to have killed Jerry Morgan. Frank initially believed Cynthia's claim but later decided it was not true. Frank explained that Cynthia had made the claim when she was angry and trying to scare Frank. Cynthia was angry because Frank was trying to stop Cynthia's drug use. Frank testified that Cynthia was not capable of killing anyone.

After the hearing, the district court issued an opinion finding that Cynthia had not recanted her trial testimony. The district court found that:

> [T]he credibility (or lack thereof) of the witnesses who testified was not obvious from either their statements or their demeanor. The Court therefore considered the testimony in light of the entire record, which supported [Cynthia] slightly more than Nancy Brown. In addition, the similarity between Nancy Brown's testimony of her encounter with [Cynthia] and her testimony about the vision she experienced while praying for Kelly suggests to the Court that Nancy Brown's memory of [Cynthia's] recantation arose from that vision, rather than from reality. Finally, the Court noted a discrepancy between Nancy Brown's and Conley Brown's testimony: Conley Brown testified that [Cynthia] made some of the same statements to him and his wife together that Nancy Brown testified [Cynthia] made to her only in private . . . .
>
> The Court finds by a preponderance of the evidence that Cynthia . . . did not recant her trial testimony in her conversations with Nancy Brown and/or Conley Brown. Specifically, the Court finds that [Cynthia] did not say that Kelly did not kill the Morgan infant; did not say that law enforcement was involved in the murder[;] and did not say that the reason she testified against Kelly at his trial was because she had been threatened by law enforcement with harm, to herself and to her child Alvin Jr., if she refused to do so.

Kelly, 2007 WL 541941 at *5.

As previously set forth, we review findings of fact for clear error and conclusions of law de novo. Horn, 508 F.3d at 311. Our review for clear error with respect to credibility determinations is very deferential because the district court observed the witnesses testify. United States v. Casteneda, 951 F.2d 44, 48 (5th Cir. 1992). "We, however, will intervene, and declare testimony incredible as a matter of law, 'when testimony is so unbelievable on its face that it defies physical laws.'" Id. (quoting United States v. Lindell, 881 F.2d 1313, 1322 (5th Cir. 1989)).

We have reviewed the record of the evidentiary hearing and there is evidence to support the district court's factual findings. Kelly falls woefully short of demonstrating clear error. In light of the finding that Cynthia did not recant her trial testimony, Kelly has not shown that the state court's rejection of his claims of knowing use of perjured testimony and failure to disclose material exculpatory evidence are objectively unreasonable.[3]

The district court's judgment is AFFIRMED.

---

[3] We note that although respondent argues that Kelly's claims are procedurally barred, we deny relief based on the merits of the claim. See Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (explaining that courts need not "invariably" consider the question of procedural default before reaching the merits).