immortal, while men are mortal." *Ocean Insurance Co. v. Fields*, 18 F.Cas. 582 (C.D.D.Mass.1841) (No. 10,406). Little more need be said.

The district court's judgment in 88–1894 is REVERSED and the Browning's motion for summary judgment is GRANTED. In 88–1761, the district court's judgments denying Holloway's several motions for summary judgment are AFFIRMED.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eni FERNANDEZ, Defendant–Appellant.**

**No. 89–1305
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 23, 1989.

Robert R. Harris, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Philip Police, Asst. U.S. Attys., Helen M. Eversberg, San Antonio, Tex., for plaintiff-appellee.

Before GEE, DAVIS, and JONES, Circuit Judges.

PER CURIAM:

On this appeal, we consider a drug conviction entered on a conditional guilty plea. The critical issue is whether a motion to suppress was properly denied.

*Facts*

On a morning in May 1988, while observing passenger activity at the El Paso International Airport, Border Patrol Agent Charles Diaz noticed an unidentified male enter the airport terminal, check two dark suitcases at the Delta Airline counter, and hurriedly depart. Diaz then proceeded to the Delta baggage area behind the ticket counter and received permission to look among the suitcases for the two checked in by the unidentified man. When he located the suitcases, he found that they lacked visible identification tags but had destination tags to LaGuardia via DFW. Diaz then removed the smaller suitcase and while doing so felt a shifting of weight within it. He then shook it and felt the "thudding of a solid mass within the suitcase"; and when he compressed the suitcase an odor of marijuana came out. Diaz followed the same procedure with the larger suitcase with the same result. At this time he also discovered the identification tags in the sides of the luggage. At this point another agent joined Diaz, and he also smelled the odor of marijuana emanating from the two suitcases. This portion of the investigation took only ten minutes.

Since the agents decided that the suitcases contained marijuana, they took the two suitcases to the Border Patrol office and called a narcotics sniffing dog to confirm their suspicions. In the meantime, they went to interview the Delta ticket agent to try to determine to whom the two suitcases belonged. The ticket agent was able to tell the agents that only two passengers, a man named North and a woman named Fernandez, were bound for LaGuardia.

The agents headed back to the office where the suitcases had been set up awaiting the arrival of the narcotics dog. Meanwhile, another agent placed a call to the DEA office in Dallas–Fort Worth to apprise them of the situation in El Paso. He related to a Dallas agent, Hoskins, that two suitcases emitting the odor of marijuana were seized in El Paso, that their final destination was New York, and that only two passengers, Fernandez and North, were going from El Paso to New York.

Mr. Hoskins met the incoming Delta flight upon its arrival. He stood next to the ticket agents to listen for the two passengers to inquire about the connecting flight to New York. Mr. North, a man in his late fifties or early sixties, was the first to ask. Hoskins did not think North fit the drug courier profile, so he waited for the other passenger. Fernandez deplaned and asked about the flight. Hoskins then approached her, identified himself with his badge, and asked permission to speak to her. She agreed to speak to him, but became very nervous.

Hoskins asked to see her ticket. With trembling hands, she produced a one-way ticket from El Paso to New York in the name of "Ely Fernandez." After inspecting it, Hoskins noticed that the ticket was bought for cash and that no baggage claim checks were stapled to the ticket folder. He returned the ticket and asked for identification. As she reached for her identification, Hoskins noticed a stack of twenty-dollar bills in her bag. Fernandez showed him her passport with her picture and the name "Eni Fernandez." When asked about the discrepancy in first names, Fernandez responded that someone else had made the reservations or that airline personnel made a mistake on the ticket. Hoskins returned the passport, asking if she would mind if he looked into her carry-on bag; and she permitted him to do so.

Inside her carry-on bag was new baby clothing, which Fernandez said she bought on her shopping trip to El Paso. Hoskins then asked if Fernandez had checked any luggage, which she denied. Fernandez testified that she told Hoskins that she had no luggage because she had left her clothes with her husband. Hoskins questioned Fernandez about the amount of money in her bag. She told him that she was carrying about a thousand dollars. Hoskins believed it was much more. He asked if she would not mind accompanying him to the task force office where her money could be counted. Even though Hoskins told Fernandez she was not under arrest and could choose not to accompany him, she agreed to go with him. Later, she testified that she did not want to accompany Hoskins but felt that she had to.

Upon arriving at the office, Hoskins counted the money, which amounted to $2,200. When asked why she was carrying so much money, Fernandez responded in confused and conflicting ways: that she "just had the money"; that she was going to go shopping; and that the money was to pay bills. Hoskins then placed a call to the United States Attorney and apprised him of the situation in El Paso and Dallas. He advised the agents to talk to Mr. North and make sure that his baggage tags did not match those on the seized suitcases. When Hoskins again called to report that North's tags did not match, the United States attorney told Hoskins that he had enough probable cause to detain Fernandez and advised him to place her under arrest. Up until that point, about thirty to forty minutes had elapsed.

Hoskins then advised Fernandez of her constitutional rights. He testified that Fernandez understood her rights and never asked for an attorney. Fernandez testified that she was not read her rights until after she was searched by Agent Stover. Agent Stover had escorted Fernandez to the bathroom where the strip search was conducted. When they returned to the office, Agent Stover handed Hoskins the tags discovered during the strip search. The numbers on these tags corresponded to the numbers on the suitcases in El Paso.

At some point during this course of events, the narcotics dog alerted on the two suitcases in El Paso. Hoskins informed the El Paso agents about the matching tags that had been discovered on Fernandez. One of the agents then made application for a search warrant. Hoskins asked Fernandez if she would not mind signing a consent to open the two suitcases. After some hesitation, Fernandez voluntarily signed the form, which was then faxed to El Paso. When the luggage was opened, agents found forty-three pounds of marijuana.

■ Fernandez's motion to suppress evidence was denied after a hearing, and she entered a conditional guilty plea.[1]

### Analysis

On appeal, Fernandez argues that the act of accompanying Hoskins to the DEA office was more than a seizure, that it was an arrest and thus required more than reasonable suspicion. If an arrest, it required probable cause, which Fernandez asserts

---

1. The conditional guilty plea is not in the record. Fed.R.Crim.P. 11(a)(2) requires that such a guilty plea be approved by the court and that the defendant reserve in writing a right to appeal from an adverse pre-plea ruling. The written reservation of the right, if any, is not part of the record. And while the government concedes that Fernandez reserved her right to appeal the suppression issue, there is nothing to indicate that the district court approved the guilty plea. The docket sheet does not indicate that a written agreement or reservation of right to appeal or approval of the judge was presented for inclusion in the record.

No party raises the issue, however, and Rule 11(h) provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." The non-compliance with Rule 11(a)(2) or the failure to document compliance may thus be seen as excused by Rule 11(h). There is no case law on point, however. The notes to the 1983 amendment to Rule 11(a) state that "[t]he requirement of approval by the court is most appropriate, as it ensures, for example, that the defendant is not allowed to take an appeal on a matter which can only be fully developed by proceeding to trial." No such difficulty is presented in Fernandez's appeal, and we therefore conclude that Rule 11(h) applies to excuse the irregularity.

Hoskins did not have. According to Fernandez, the agents did not have probable cause to arrest her until after the strip search. Thus, the discovery of the baggage receipts as a result of the illegal search violated the Fourth Amendment; and her subsequent consent to search the suitcase was a fruit of that violation.

Fernandez does not challenge the voluntariness of her consent to talk. She contends, however, that when Hoskins asked her to accompany him to the DEA office, this constituted an arrest. We have held that requiring an individual to proceed against his will from an airport concourse to an office for further interrogation constitutes a seizure equivalent to an arrest that must be justified by probable cause. *United States v. Berry*, 670 F.2d 583, 602 (5th Cir.1982). However, if the individual voluntarily consents to go with the officers, there is no resulting de facto arrest, and probable cause is unnecessary. *United States v. Ehlebracht*, 693 F.2d 333, 338 (5th Cir.1982).

■ The district court found that Fernandez "agreed to go" with Hoskins to the DEA office. Therefore, if "agreed to go" is a finding of voluntary consent, there would be no seizure, no arrest, and no need for probable cause. But the court also determined that, when Hoskins requested Fernandez to accompany him to the DEA office, a "seizure" of her person took place which required reasonable suspicion to support it. The district court was, however, at cross purposes because, as we have previously stated, such a seizure is equivalent to an arrest which requires probable cause. *Berry*, at 602. However, if the finding that she "agreed to go" is not found to be voluntary consent to accompany Hoskins, then Fernandez was in effect arrested—a step for which probable cause was required. No remand to resolve the ambiguity is required, however; for Agent Hoskins plainly did have probable cause to seize Fernandez.

Two suitcases destined for New York were discovered and reasonably believed to contain marijuana. Only two passengers aboard the flight were headed to New York. Thus, the two suitcases all but surely belonged to one of these two passengers. One of the passengers, North, was an older businessman who did not fit the drug courier profile; and Hoskins did not even stop North. Hoskins did, however, stop the other passenger, Fernandez, a casually dressed female who was travelling alone. When speaking with her, Hoskins noticed that she appeared nervous. And when he asked her for her ticket and identification, her hands trembled. Hoskins noticed a large amount of cash in her bag. Additionally, her ticket was paid for with cash, it slightly misstated her name, and it did not have baggage claim tags attached. All of these facts, taken together, clearly gave Hoskins the requisite probable cause to arrest Fernandez as a person responsible for the suitcases of marijuana.

■ In reviewing a district court's ruling on a motion to suppress based on live testimony at a suppression hearing, we must accept the district court's purely factual findings unless they are clearly erroneous. *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984). A finding is clearly erroneous when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). The reviewing court cannot reverse the finding simply because it would have decided differently. *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511. Where there are two permissible views of the evidence, the fact finder's choice between them *cannot* be clearly erroneous. *Levrie v. Dept. of Army*, 810 F.2d 1311, 1314–15 (5th Cir.1987). The clearly erroneous standard is an especially rigorous one where the findings are based primarily on oral testimony and the trial judge has viewed the demeanor of the witnesses. *Bryan v. Kershaw*, 366 F.2d 497, 499 (5th Cir.1966). *cert. denied*, 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108 (1967).

In this case, the district court's determination of voluntariness of the consent is

not clear. The evidence supports a finding that Fernandez voluntarily consented to go with Hoskins to the DEA office. Alternatively, if we interpret the district court's order as finding that Fernandez did not voluntarily consent to go with Hoskins, the evidence is clear that Hoskins had probable cause to seize or arrest Fernandez. The subsequent search of her person was incident to the lawful arrest. The baggage tags recovered as a result of this search are fruits of a legal search. Thus, the Fourth Amendment is not violated and the subsequent search of the suitcases is also legal.

Since the evidence supports a finding of either voluntary consent to accompany or probable cause to seize or arrest, the district court's order is not clearly erroneous. Additionally, the district court judge is in a better position than we to judge the demeanor of Hoskins and Fernandez. Its decision must be upheld.

AFFIRMED.