COURT OF
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-056-CR
NO. 2-02-057-CR
NO. 2-02-058-CR
 
DAVID MILTON GUNDRUM                                               
APPELLANT
A/K/A DAVID M. GUNDRUM
V.
THE STATE OF TEXAS                                                       
STATE
------------
FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
------------
OPINION ON REHEARING
------------
We grant the State's motion for rehearing, withdraw our opinion and judgment
issued November 21, 2002, and substitute the following in their place.
A jury convicted Appellant David Milton Gundrum of three offenses of
aggravated robbery with a deadly weapon. (1) He
pled true to habitual and enhancement paragraphs and was sentenced to seventy
years' confinement. In three points, Appellant complains that the evidence was
legally and factually insufficient to support the verdict, that the trial court
abused its discretion by admitting testimony "based upon an unduly
suggestive photospread," and that the trial court abused its discretion by
denying his Batson challenge. Because we hold that the evidence was
legally and factually sufficient and that the trial court did not err, we affirm
the judgments of the trial court.
Sufficiency of the Evidence and Admissibility of
Identification Testimony
In his first point, Appellant complains that the evidence was legally and
factually insufficient under Jackson v. Virginia
(2) and Clewis v. State (3)
respectively. In his second point, Appellant complains that the trial court
abused its discretion and violated his due process rights by admitting testimony
of four witnesses who identified him out-of-court from a photospread because the
photospread was "unduly suggestive." Appellant argues these three
issues together for the sake of brevity and presumably because, by his own
admission, identity was the only contested issue in the case. We shall address
the issues together as well.
Regarding the photospread, Appellant specifically complains that only two of
the six pictures were of men with no shirts, only three of the six pictures were
of men with light hair, and one picture did not match any of the eyewitness
descriptions. According to Appellant, "The fact that only one photo in six
even came close to the description of each identification witness shown a
photospread in this case demonstrates that the photospread used was unduly
suggestive."
Suggestiveness may occur in the process itself, for example, by police
indicating that a suspect is in the photospread. (4)
Suggestiveness may also arise from the content of the photo array "if the
suspect is the only individual closely resembling the pre-procedure
description." (5) A pretrial photospread may
be suggestive enough and may heighten the risk of "mistaken
identification" enough that "subsequent use of that identification at
trial would deny the accused due process of law." (6)
The two questions we ask to determine whether due process has been violated are:
1) whether the out-of-court identification procedure was impermissibly
suggestive; and, if suggestive, 2) whether that suggestive procedure gave rise
to a substantial likelihood of irreparable misidentification.
(7) An analysis under this test requires us to look at the
"totality of the circumstances" and determine the reliability of the
identification. (8) If the indicia of reliability
outweigh suggestiveness, then the identification is admissible.
(9)
The State does not argue that the photospread was not suggestive. Instead, it
argues that Appellant has failed to show that there was a substantial likelihood
of irreparable misidentification. Assuming arguendo that the
photospread was suggestive, and looking at the totality of the circumstances, we
hold that there was no substantial likelihood of irreparable misidentification
in this case.
Shirley Pratt testified that she was robbed in broad daylight in a K-Mart
parking lot while she sat in the driver's seat of her car and the robber knelt
or squatted inside her open car door on the driver's side, pointing a gun at
her. He was about six to twenty-four inches away. She identified Appellant in
court as the robber who took her purse. She stated that when she saw the
photospread, she recognized Appellant at once from his face. She did not recall
stating to the police in her written statement that the robber's teeth were
decaying; Appellant's teeth did not appear decayed during trial. Camille Homan,
a witness to the K-Mart robbery, also identified Appellant in court as the man
she saw running with the purse in the parking lot and speeding off in a red
truck. In her original statement, she stated that he had jagged teeth, but at
trial, she admitted that Appellant's teeth were not that jagged. She
nevertheless testified that she was certain that he was the man she saw running
with the black purse in the parking lot that day.
Jennifer Wargnier, a Sonic carhop, testified that she was robbed one night
after she delivered food to a man in a red Ford pickup with a camper shell. He
pulled a gun on her and demanded all her money. Before the robbery, she had
noticed him hanging his head out of the window while she took an order from the
lady next to him. She told the investigating officer that she could identify the
robber if she saw him again. In court, she identified Appellant as the robber.
She also testified that she had identified him from the photospread with no
hesitation. Finally, she admitted that the only person in the photospread who
fit the general description of the robber was Appellant.
Kacee Corthay, another carhop, testified that she was robbed at a Sonic one
morning before noon. She delivered an order to a person in a maroon pickup with
a camper shell. He then pulled a gun on her and demanded all her money. In
court, she identified Appellant as the robber. She also identified State's
exhibit six as looking "exactly like" the handgun the robber used.
Further, she stated, "I didn't know exact hair color, exact eye color, but
I did look him in the eye and in the face when I was talking to him. I could
recognize him out of a crowd."
Appellant's ex-girlfriend, subpoenaed by the State, testified that he told
her he committed all three robberies. The truck Appellant drove matched the
description of the pickup in which the robber fled each crime scene. The pistol
found on Appellant's person at the time of arrest looked "exactly
like" the one used in the robberies. At trial, all of the complainants and
eyewitnesses positively identified Appellant as the robber. We cannot say that
the photospread created a substantial likelihood of irreparable
misidentification.(10) The trial court therefore
did not abuse its discretion in admitting the testimony of the four
eyewitnesses. Further, applying the appropriate standards of review,(11)
we hold that the evidence is both legally and factually sufficient to support
the jury's verdict.(12) We overrule Appellant's
first and second points.
Batson Challenge
In his third point, Appellant complains that the trial court reversibly erred
and abused its discretion by denying his Batson(13)
challenge to the State's peremptory strike of a venire person. On appeal,
Appellant seems to argue that his Batson challenge was based on both
race and gender. Our review of the record reveals that the challenge was based
solely on race; Appellant has thus failed to preserve any gender-based
challenge.(14) Consequently, we address only the
race-based challenge.
To challenge the State's exercise of a peremptory strike, a defendant must
make a prima facie showing of discrimination.(15)
The State then has the burden to produce a facially neutral reason for the
strike. (16) When the State offers an
explanation for the strike and the trial court rules on the ultimate question of
discrimination, it is the State's explanation, not the defendant's prima facie
showing, that we review on appeal. (17) We will
not disturb the trial court's ruling on a Batson challenge unless it is
clearly erroneous. (18) A ruling is
"clearly erroneous" if it gives us the "definite and firm
conviction that a mistake has been committed."(19)
Appellant complained after voir dire that the State struck a black woman, Ms.
Sample, because of her race. The State replied that it struck her because she
indicated on her questionnaire that rehabilitation was the main purpose of the
criminal justice system. Additionally, the State stated that it struck all
venire members who ranked rehabilitation exclusively as the first goal of the
criminal justice system and who were not otherwise struck for cause. Our review
of the jury questionnaires confirms that the State did in fact do so. Further,
the two remaining black members of the venire panel served on the jury. We
therefore hold that the trial court's ruling that the State's challenge was
based on racially neutral reasons was not clearly erroneous. We overrule
Appellant's third point.
Conclusion
Having overruled Appellant's three points on appeal, we affirm the trial
court's judgments.
PER CURIAM
PANEL F: DAUPHINOT, J.; CAYCE, C.J.; and WALKER, J.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

1. See Tex. Penal Code Ann. § 29.03(a)(2)
(Vernon 1994).
2. 443 U.S. 307, 99 S. Ct. 2781 (1979).
3. 922 S.W.2d 126 (Tex. Crim. App. 1996).
4. Barley v. State, 906 S.W.2d 27, 33 (Tex.
Crim. App. 1995), cert. denied, 516 U.S. 1176 (1996).
5. Id.
6. Conner v. State, 67 S.W.3d 192, 200
(Tex. Crim. App. 2001).
7. Id.; Simmons v. United States,
390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968).
8. Simmons, 390 U.S. at 383-84, 88 S. Ct.
at 971.
9. Barley, 906 S.W.2d at 34.
10. See id. at 34-35.
11. See Emery v. State, 881 S.W.2d 702, 705
(Tex. Crim. App. 1994), cert. denied, 513 U.S. 1192 (1995); Narvaiz
v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), cert. denied,
507 U.S. 975 (1993) (both providing legal sufficiency standard of review); Santellan
v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (both providing factual sufficiency
standard of review).
12. See Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Clewis, 922 S.W.2d. at 134.
13. Batson v. Kentucky, 476 U.S. 79, 106 S. Ct.
1712 (1986).
14. See Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002).
15. Batson, 476 U.S. at 94-96, 106 S. Ct. at
1722; Harris v. State, 827 S.W.2d 949, 955 (Tex. Crim. App.), cert.
denied, 506 U.S. 942 (1992).
16. Batson, 476 U.S. at 97, 106 S. Ct. at 1723; Harris,
827 S.W.2d at 955.
17. Malone v. State, 919 S.W.2d 410, 412 (Tex.
Crim. App. 1996).
18. Williams v. State, 804 S.W.2d 95, 101 (Tex.
Crim. App.), cert. denied, 501 U.S. 1239 (1991).
19. United States v. Fernandez, 887 F.2d 564,
567 (5th Cir. 1989) (citing and quoting Anderson v. City of
Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).