David Milton Gundrum a/k/a David M Gundrum v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-056-CR

NO. 2-02-057-CR

NO. 2-02-058-CR

DAVID MILTON GUNDRUM APPELLANT

A/K/A DAVID M. GUNDRUM 

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION ON REHEARING

------------

We grant the State's motion for rehearing, withdraw our opinion and judgment issued November 21, 2002, and substitute the following in their place.  

A jury convicted Appellant David Milton Gundrum of three offenses of aggravated robbery with a deadly weapon.
(footnote: 1)  He pled true to habitual and enhancement paragraphs and was sentenced to seventy years’ confinement.  In three points, Appellant complains that the evidence was legally and factually insufficient to support the verdict, that the trial court abused its discretion by admitting testimony “based upon an unduly suggestive photospread,” and that the trial court abused its discretion by denying his 
Batson
 challenge.  Because we hold that the evidence was legally and factually sufficient and that the trial court did not err, we affirm the judgments of the trial court.

Sufficiency of the Evidence and Admissibility of Identification Testimony

In his first point, Appellant complains that the evidence was legally and factually insufficient under 
Jackson v. Virginia
(footnote: 2) and 
Clewis v. State
(footnote: 3) respectively.  In his second point, Appellant complains that the trial court abused its discretion and violated his due process rights by admitting testimony of four witnesses who identified him out-of-court from a photospread because the photospread was “unduly suggestive.”  Appellant argues these three issues together for the sake of brevity and presumably because, by his own admission,  identity was the only contested issue in the case.  We shall address the issues together as well.  

Regarding the photospread, Appellant specifically complains that only two of the six pictures were of men with no shirts, only three of the six pictures were of men with light hair, and one picture did not match any of the eyewitness descriptions.  According to Appellant, “The fact that only one photo in six even came close to the description of each identification witness shown a photospread in this case demonstrates that the photospread used was unduly suggestive.” 

Suggestiveness may occur in the process itself, for example, by police indicating that a suspect is in the photospread.
(footnote: 4)  Suggestiveness may also arise from the content of the photo array “if the suspect is the only individual closely resembling the pre-procedure description.”
(footnote: 5)  
A pretrial photospread may be suggestive enough and may heighten the risk of “mistaken identification” enough that “subsequent use of that identification at trial would deny the accused due process of law.”
(footnote: 6)  The two questions we ask to determine whether due process has been violated are: 1) whether the out-of-court identification procedure was impermissibly suggestive;  and, if suggestive, 2) whether that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.
(footnote: 7)  An analysis under this test requires us to look at the "totality of the circumstances" and determine the reliability of the identification.
(footnote: 8)  If the indicia of reliability outweigh suggestiveness, then the identification is admissible.
(footnote: 9)
 The State does not argue that the photospread was not suggestive.  Instead, it argues that Appellant has failed to show that there was a substantial likelihood of irreparable misidentification.  Assuming 
arguendo
 that the photospread was suggestive, and looking at the totality of the circumstances, we hold that there was no substantial likelihood of irreparable misidentification in this case.

Shirley Pratt testified that she was robbed in broad daylight in a K-Mart parking lot while she sat in the driver’s seat of her car and the robber knelt or squatted inside her open car door on the driver’s side, pointing a gun at her.  He was about six to twenty-four inches away.  She identified Appellant in court as the robber who took her purse.  She stated that when she saw the photospread, she recognized Appellant at once from his face.  She did not recall stating to the police in her written statement that the robber’s teeth were decaying; Appellant’s teeth did not appear decayed during trial.  Camille Homan, a witness to the K-Mart robbery, also identified Appellant in court as the man she saw running with the purse in the parking lot and speeding off in a red truck.  In her original statement, she stated that he had jagged teeth, but at trial, she admitted that Appellant’s teeth were not that jagged.  She nevertheless testified that she was certain that he was the man she saw running with the black purse in the parking lot that day. 

Jennifer Wargnier, a Sonic carhop, testified that she was robbed one night after she delivered food to a man in a red Ford pickup with a camper shell.  He pulled a gun on her and demanded all her money.  Before the robbery, she had noticed him hanging his head out of the window while she took an order from the lady next to him.  She told the investigating officer that she could identify the robber if she saw him again.  In court, she identified Appellant as the robber.  She also testified that she had identified him from the photospread with no hesitation.  Finally, she admitted that the only person in the photospread who fit the general description of the robber was Appellant.

Kacee Corthay, another carhop, testified that she was robbed at a Sonic one morning before noon.  She delivered an order to a person in a maroon pickup with a camper shell.  He then pulled a gun on her and demanded all her money.  In court, she identified Appellant as the robber.  She also identified State’s exhibit six as looking “exactly like” the handgun the robber used. Further, she stated, “I didn’t know exact hair color, exact eye color, but I did look him in the eye and in the face when I was talking to him.  I could recognize him out of a crowd.” 

Appellant’s ex-girlfriend, subpoenaed by the State, testified that he told her he committed all three robberies.  The truck Appellant drove matched the description of the pickup in which the robber fled each crime scene.  The pistol found on Appellant’s person at the time of arrest looked “exactly like” the one used in the robberies.  At trial, all of the complainants and eyewitnesses positively identified Appellant as the robber.  We cannot say that the photospread created a substantial likelihood of irreparable misidentification.
(footnote: 10)  The trial court therefore did not abuse its discretion in admitting the testimony of the four eyewitnesses.  Further, applying the appropriate standards of review,
(footnote: 11) we hold that the evidence is both legally and factually sufficient to support the jury’s verdict.
(footnote: 12)  We overrule Appellant’s first and second points.
 

Batson Challenge

In his third point, Appellant complains that the trial court reversibly erred and abused its discretion by denying his 
Batson
(footnote: 13) challenge to the State’s peremptory strike of a venire person.  On appeal, Appellant seems to argue that his 
Batson
 challenge was based on both race and gender.  Our review of the record reveals that the challenge was based solely on race; Appellant has thus failed to preserve any gender-based challenge.
(footnote: 14)  Consequently, we address only the race-based challenge.

To challenge the State’s exercise of a peremptory strike, a defendant must make a prima facie showing of discrimination.
(footnote: 15)  The State then has the burden to produce a facially neutral reason for the strike.
(footnote: 16)  When the State offers an explanation for the strike and the trial court rules on the ultimate question of discrimination, it is the State’s explanation, not the defendant’s prima facie showing, that we review on appeal.
(footnote: 17)  We will not disturb the trial court’s ruling on a 
Batson
 challenge unless it is clearly erroneous.
(footnote: 18)  A ruling is “clearly erroneous” if it gives us the “definite and firm conviction that a mistake has been committed.”
(footnote: 19) 

Appellant complained after voir dire that the State struck a black woman, Ms. Sample, because of her race.  The State replied that it struck her because she indicated on her questionnaire that rehabilitation was the main purpose of the criminal justice system.  Additionally, the State stated that it struck all venire members who ranked rehabilitation exclusively as the first goal of the criminal justice system and who were not otherwise struck for cause.  Our review of the jury questionnaires confirms that the State did in fact do so.  Further, the two remaining black members of the venire panel served on the jury.  We therefore hold that the trial court’s ruling that the State’s challenge was based on racially neutral reasons was not clearly erroneous.  We overrule Appellant’s third point.

Conclusion

Having overruled Appellant’s three points on appeal, we affirm the trial court’s judgments.

PER CURIAM

PANEL F: DAUPHINOT, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

FOOTNOTES
1:
See
 
Tex. Penal Code Ann.
 § 29.03(a)(2) (Vernon 1994).

2:
443 U.S. 307, 99 S. Ct. 2781 (1979).

3:
922 S.W.2d 126 (Tex. Crim. App. 1996).

4:
Barley v. State
, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995), 
cert. denied, 
516 U.S. 1176 (1996). 

5:
Id.

6:
Conner v. State
,
 
67 S.W.3d 192, 200 (Tex. Crim. App. 2001)
.

7:
Id.
; 
Simmons v. United States
, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968).

8:
Simmons
, 390 U.S. at 383-84, 88 S. Ct. at 971.

9:
Barley
, 906 S.W.2d at 34.

10:
See id.
 at 34-35.

11:
See Emery v. State
, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1192 (1995);
 Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993) (both providing legal sufficiency standard of review); 
Santellan v. State
, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (both providing factual sufficiency standard of review).

12:
See Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis,
 922 S.W.2d. at 134.
 

13:
Batson v. Kentucky
, 476 U.S. 79, 106 S. Ct. 1712 (1986).

14:
See Wilson v. State
, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

15:
Batson
, 476 U.S. at 94-96, 106 S. Ct. at 1722; 
Harris v. State
, 827 S.W.2d 949, 955 (Tex. Crim. App.), 
cert. denied
, 506 U.S. 942 (1992).

16:
Batson
, 476 U.S. at 97, 106 S. Ct. at 1723; 
Harris
, 827 S.W.2d at 955.

17:
Malone v. State
, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996).

18:
Williams v. State
, 804 S.W.2d 95, 101 (Tex. Crim. App.), 
cert. denied
, 501 U.S. 1239 (1991).

19:
United States v. Fernandez
, 887 F.2d 564, 567 (5
th
 Cir. 1989) (citing and quoting 
Anderson v. City of Bessemer City,
 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).