COURT OF 
APPEALS
                                                 
SECOND DISTRICT OF TEXAS
                                                                 
FORT WORTH
 
 
                                        
NO. 2-05-157-CR
 
 
DARRYL 
OATES, JR.                                                            
APPELLANT
 
                                                   
V.
 
THE 
STATE OF TEXAS                                                                
STATE
 
                                              
------------
 
            
FROM THE 297TH DISTRICT COURT OF TARRANT 
COUNTY
 
                                              
------------
 
                                
MEMORANDUM 
OPINION[1]
 
                                              
------------

A 
jury convicted Appellant Darryl Oates, Jr. of theft from a person, enhanced by 
two prior felony convictions, and assessed his punishment at fifteen 
years= 
confinement in the Institutional Division of the Texas Department of Criminal 
Justice.  The trial court sentenced 
him accordingly.  Because we hold 
that the evidence is legally and factually sufficient to support the conviction 
and that the trial court did not err, we affirm the trial court=s 
judgment.
In 
his first two points, Appellant contends that the evidence is legally and 
factually insufficient to support his conviction.  Appellant focuses on the 
complainant=s 
identification of him as the culprit.  
The evidence shows the following.  
The complainant was getting gas in the early morning hours at a 
convenience store in southern Fort Worth.  
The outside area was well lit.  
A black male approached her and asked for help.  Before she could reach the door of the 
store, he attacked her and stole her wallet.  His face was very close to hers during 
the altercation.  The thief then 
rode off in a Ford Explorer.  Store 
personnel called 911, and the complainant told the police that the person who 
stole her wallet was a black man wearing a stocking 
cap.

Meanwhile, 
a witness, Vitaliy Felkovich, who was driving his car, saw  what happened at the convenience store 
from his vantage point in the street, followed the Ford Explorer, and called 
911.  Eventually, the police stopped 
the Explorer.  It contained two men 
and a woman.  The police took the 
complainant to the scene of the arrest.  
The police had their spotlights on the two male suspects.  The complainant identified Appellant as 
the thief after the police put a stocking cap on his head.  The police had found the cap in the 
Explorer.  The other suspect already 
had a hat on.  When asked at the 
time of her identification at the scene, the complainant said that she was sure 
that Appellant was the man who had stolen her wallet.  The complainant also identified him in 
court as both the man who had stolen her wallet and the man whom she had 
previously identified as the thief.  
Although she testified that the placement of the cap on Appellant helped 
her identify him, the complainant also testified that she could have done it 
without the cap because the man who had attacked her was a younger man, like 
Appellant.  Appellant=s 
companion was older.  Based on the 
applicable standards of review,[2] 
we hold that the evidence is legally and factually sufficient to support 
Appellant=s 
conviction.
In 
his third point, Appellant contends that the trial court erred by admitting 
evidence of the complainant=s 
pretrial identification of him as the thief and by allowing her to identify 
Appellant as the thief at trial.  
His brief makes clear that he is contending that the in-court 
identification is inadmissible because it is tainted by an unduly suggestive 
pretrial identification.


An 
in‑court identification is inadmissible if tainted by an unduly suggestive 
pretrial identification.[3]  The test is whether considering the 
totality of the circumstances, the pretrial identification procedure was so 
impermissibly suggestive as to give rise to a very substantial likelihood of 
irreparable misidentification.[4]  The defendant has the burden of showing 
by clear and convincing evidence that the in‑court identification is 
unreliable.[5]  The admissibility of an identification 
is a mixed question of law and fact that we review de novo,[6] 
but we view the five Biggers[7] 
factorsC(1) 
the witness=s 
opportunity to view the criminal at the time of the crime; (2) the witness's 
degree of attention; (3) the accuracy of the witness's prior description of the 
criminal; (4) the level of certainty demonstrated by the witness at the 
confrontation; and (5) the length of time between the crime and the 
confrontationCall 
issues of historical fact, deferentially in a light favorable to the trial 
court's ruling.[8]  Viewing the factors in this light, we 
then weigh them de novo against Athe 
corrupting effect@ 
of the suggestive pretrial identification procedure.[9]  Based on our review of the evidence 
under this standard, we cannot say that the trial court abused its discretion in 
admitting the identification evidence.  
We overrule Appellant=s 
third point.

In 
his fourth point, Appellant claims that the trial court erred in overruling his 
Batson[10] 
objections to jurors numbered three, four, nine, fifteen, twenty-seven, and 
thirty-nine.[11]  To challenge the 
State=s exercise of a 
peremptory strike, a defendant must make a prima facie showing of 
discrimination.[12]  The State then has the burden to produce 
a facially neutral reason for the strike.[13]  If the prosecutor=s explanation 
does not show an inherent discriminatory intent, then the explanation will be 
deemed race-neutral.[14]  Discrimination is not shown merely 
because the State=s reasons for 
striking a juror might also apply to other acceptable jurors because it is 
unlikely that two potential jurors will possess the same characteristics in 
precisely the same degrees.[15]  After the State offers race-neutral 
reasons for the strikes, as the Texas Court of Criminal Appeals has 
explained,
Texas jurisprudence holds that . . 
. the burden is on the defendant to convince the trial court that the 
prosecution's reasons were not race‑neutral.  Thus, the burden of production shifts 
from the defendant in step one to the State in step two, but the burden of 
persuasion never shifts from the defendant.[16]
 
We will not 
disturb the trial court=s ruling on a 
Batson challenge unless it is clearly erroneous.[17]  A ruling is Aclearly 
erroneous@ if it gives us 
the Adefinite and 
firm conviction that a mistake has been committed.@[18]

After 
Appellant identified these jurors as members of minority races, the prosecutor 
responded with facially neutral reasons for the strikes.  Juror three had experience as a crime 
victim and did not like the police.  
Juror four was falling asleep during voir dire and had a prior 
arrest.  Juror nine was also falling 
asleep and had a prior DWI conviction.  
Juror fifteen worked with at-risk youth and listed rehabilitation as a 
preference.  Juror twenty-seven had 
been charged with assault and also listed rehabilitation as a preference.  Juror thirty-nine had been charged with 
credit card abuse.
Appellant 
responded that he did not see any juror sleeping and that the State had not 
struck white jurors who had listed rehabilitation as a preference.  The State replied that it had not struck 
jurors six and nineteen, who were also black.  The trial court concluded that Appellant 
had not shown a pattern of discrimination and denied the Batson 
challenge.  Based on our review of 
the record and the law, we cannot say that the trial court=s 
ruling on Appellant=s 
Batson challenge was clearly erroneous.  We overrule Appellant=s 
fourth point.
Having 
overruled Appellant=s 
four points, we affirm the trial court=s 
judgment.
PER 
CURIAM
PANEL 
F:    DAUPHINOT, J.; CAYCE, 
C.J.; and MCCOY, J.
DO 
NOT PUBLISH
Tex. 
R. App. P. 
47.2(b)
 
DELIVERED:  December 8, 2005
 




[1]See Tex. R. App. P. 
47.4.

[2]See 
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 
S.W.3d 608, 613 (Tex. Crim. App. 2001); Dewberry v. State, 4 S.W.3d 735, 
740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000) (all 
providing legal sufficiency standard of review); Zuniga v. State, 144 S.W.3d 477, 481-82, 484-87 
(Tex. Crim. App. 2004); Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. 
App. 2003); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) 
(all providing factual sufficiency standard of 
review).

[3]Loserth 
v. State, 
963 S.W.2d 770, 771-72 (Tex. Crim. App. 1998).

[4]Id. at 
772.

[5]Delk 
v. State, 855 S.W.2d 700, 706 (Tex. Crim. App.), cert. denied, 510 
U.S. 982 (1993).

[6]Loserth, 963 S.W.2d at 
773.

[7]Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 
382 (1972).

[8]Loserth, 963 S.W.2d at 
774.

[9]Id. at 
773-74.

[10]Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 
(1986).

[11]While Appellant complains of the 
overruling of his Batson objection to juror ninety-nine, the record shows 
that the State=s peremptory challenge and 
Appellant=s objection referred to juror nine, 
not juror ninety-nine.

[12]Id. at 94-96, 106 S. Ct. at 1722; 
Harris v. State, 827 S.W.2d 949, 955 (Tex. Crim. App.), cert. 
denied, 506 U.S. 942 (1992).

[13]Batson, 476 U.S. at 97, 106 S. Ct. at 
1723; Harris, 827 S.W.2d at 955.

[14]Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 
1769, 1771 (1995); Simpson v. State, 119 S.W.3d 262, 268 (Tex. Crim. App. 
2003), cert. denied, 542 U.S. 905 (2004).

[15]Cantu v. State, 842 S.W.2d 667, 689 (Tex. Crim. 
App. 1992), cert. denied, 509 U.S. 926 
(1993).

[16]Ford 
v. State, 1 
S.W.3d 691, 693 (Tex. Crim. App. 1999) (citations omitted).

[17]Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. 
App.), cert. denied, 501 U.S. 1239 (1991).

[18]United States v. 
Fernandez, 887 
F.2d 564, 567 (5th Cir. 1989) (quoting Anderson v. City of 
Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 
(1985)).